*Daniel A. Robertson, Sheriff of Ramsey County, vs. Henry H. Sibley.

R. sues as sheriff, by virtue of a levy upon the unpaid amount of subscription of S., the defendant, to the stock of the M. & C. V. R. R. Co., under an execution upon a judgment in favor of McD., G. & Co. against said R. R. Co.   *Held*— that the right of action depends entirely upon *sec.* 109, *chap.* 61 *of the Pub. Stat.*

The M. & C. V. R. R. Co. was incorporated by the Territorial Legislature by special act, approved March 1, 1856.  It does not, therefore, come within the provisions of the State Constitution relating to corporations.

The act of incorporation contains no provision making the stockholders individually liable to any extent for the debts of the Company, nor are the provisions of the public statutes *pp.* 330–1, *secs.* 221–2, applicable; the liability of the defendant as a stockholder, therefore, is unaffected by statutory provision.

Assuming for the purposes of this action that *subdivision* 3, *sec.* 148, *Pub. Stat.*, embraces demands of a legal and equitable character; *Held*—that the rights and liabilities of the parties to the *debt levied on*, must characterize it as a legal or equitable claim, and that the sheriff can avail himself only of equities existing between such parties, and not of such as may exist in favor of the judgment creditor against any of such parties; the plaintiff, therefore, in this case can have no greater rights against the stockholder than the Railroad Company has.

The complaint alleges that the defendant, after the organization of the Company, duly subscribed for and thereby agreed to pay to said Railroad Company two hundred and fifty shares of one hundred dollars each of the capital stock of

* Mr. Justice Berry being of counsel in this cause, took no part in its hearing and decision.

Robertson v. Sibley.

said Company, but has not paid to exceed five per cent. thereof. The charter provides that the directors may require and receive payment of the subscription to the capital stock at such time and in such proportion, not exceeding ten per cent. at any one installment, as they shall see fit, and may declare said stock forfeited and all payments thereon, or otherwise, on a failure to make payment as required, provided they shall first give thirty days notice of such requisition. *Held*—that the subscription pleaded must be taken as a naked subscription for stock showing no express promise to pay, and as between the stockholders and the company the terms of the charter regulating the subscription for stock must be considered as entering into the contract between the stockholder and the company.

The terms of the subscription must be the measure of the defendant's liability to the Company, and unless by these terms the debt is recoverable, no action can be maintained by the Company.

The complaint does not allege a call for any installment or for any amount, either upon the whole stock or the defendant individually, but avers that no call has been made; nor does it allege any default except that "the defendant has not paid to exceed five per cent. of the amount of stock subscribed by him." *Held*—that this state of facts does not show a breach of the contract by the defendant upon which the Company could maintain an action against him.

The complaint alleges the insolvency of the Company, its refusal to call for installments of stock subscription, or make provision for the payment of its debts; the total abandonment of the work for which it was created, and of its own organization since some time in 1859. *Held*—That whatever might be the effect of these facts in a proceeding in equity by a creditor against the corporation and its stockholders, they constitute no ground of action by the Company against a stockholder, but the reverse, and as the sheriff, the plaintiff in this action, has no greater rights than the Company, do not constitute a ground of action in him.

This action was commenced in the Ramsey County District Court. The allegations of the complaint which are material to the points decided are: that on the 9th day of February, 1864, a writ of execution duly issued out of said Court upon a judgment recovered therein by McDonald, Graham & Co., against The Minneapolis and Cedar Valley Railroad Company, and was directed and delivered to plaintiff, who then was and now is Sheriff of said county; that at the time of the recovery of said judgment, defendant was, ever since has been and now is a stockholder in

Robertson v. Sibley.

said company; that after the organization of said R. R. Company, defendant duly subscribed for and thereby agreed to pay to said R. R. Company, 250 shares of $100 each of the capital stock of said company, but has not paid to exceed 5 per cent. of such subscription, and is now indebted to said R. R. Company on account of such stock subscription in the sum of $23,750; that in 1859, said R. R. Co. became insolvent, and unable to pay its liabilities, except by requiring payment of the capital stock subscribed; that said R. R. Co. has neglected and refused to call for or require the payment of such stock subscriptions, or make provision for the payment of its liabilities; that since sometime in 1859, said R. R. Co. has not prosecuted or made any effort to prosecute the work for which it was incorporated, but has abandoned the same, and has not kept up its organization, nor transacted any business; that on the 9th day of February, 1864, plaintiff as such Sheriff, by virtue of such execution, duly levied upon the said indebtedness of said defendant to said R. R. Co.; that defendant neglects and refuses to pay said indebtedness to plaintiff, though often requested. The defendant demurred to said complaint upon the ground: that the plaintiff had no legal capacity to sue, and that the complaint does not state facts sufficient to constitute a cause of action. The demurrer was sustained by the Court below. The plaintiffs appeal from the order sustaining the same to this Court.

SMITH & GILMAN for Appellant.

The appellant refers to the following authorities in support of his right to maintain the action, as set forth in the complaint: *Comp. Stat., page 551, Sec. 148, subdivision 3, and page 553, subdivision 4 of Sec. 156; Henry vs. Vermillion and Ashland R. R. Co., 17 Ohio, 187; Miers et al. vs. Zanesville and M. Turnpike Co., 11 Ohio, 273, and 13 Ohio, 197.*

LORENZO ALLIS for Respondent.

I.—The Sheriff has no legal capacity to bring this action:

1. Because he has not perfected the levy as required by statute. In such case it should appear that the provisions of statute, *Sec.* 139, *subdivision* 3 *and* 4, *Sec.* 142, *Comp. Stat.*, *pages* 551–2, have been complied with. Otherwise *Sec.* 143, *Comp. Stat., page* 552, is not applicable. *Sec.* 21, *page* 196, *Rev. Stat.*

2. Because the latter statute manifestly applies to the mere collection of a liquidated debt, by ordinary process of law. It cannot be applicable to a case like the one at bar, where the equitable powers of the Court must necessarily be invoked and used, and where such powers are alone available to attain the object or end aimed at.

II.—The franchises and organization of the company long ago ceased by non-usor, and were moreover entirely forfeited, and the existence of the company ceased and its civil death was duly declared. *See allegations of the complaint; Session Laws,* 1856, *page* 325 ; *Id.,* 1857, *page* 20, *Sec.* 6, *et seq. ; Id.,* 1858, *page* 491; *Id.,* 1861, *page* 213 ; *Id.,* 1862, 227 ; *Id.,* 1863, 137 ; *Id.,* 1864, *page* 164.

To render subscription to capital stock a binding contract at all for any purpose, there must of course be mutuality, as in any other contract. If there is a failure on the one side or the other, there is of course to that extent, failure of consideration, and the other side is therefore released from performance on his part, as in other contracts.

In the case at bar it is therefore clear that the defendant's obligation or debt on his subscription ceased on the disorganization of the company and the forfeiture of its franchises, which was long before the commencement of this action.

If the company could not maintain an action for this subscription against the defendant, then the plaintiff cannot ; for the plaintiff can have no greater rights in the premises, than the company. Whatever rights the plaintiff has, if any, are obtained by a sort of legal or statutory subrogation to those possessed by the company. He stands at best only in the company's shoes, in this action.

It is clear that the company could have no claims whatever against the defendant on his subscription when this action was

commenced, nor since the disorganization and dissolution of the company—since it ceased to exercise its function and lost its franchises. *Angell & Ames on Corporations, page* 478, *Sec.* 4; *page* 159, *Sec.* 2; *pages* 160, 736, *Sec.* 4; *page* 741, *Sec.* 5; *page* 750, *Sec.* 6.

Sections 16 and 17 of the original act of incorporation of 1856, sufficiently reserve the powers exercised by the Legislature by the acts of 1861–2–3, if any such reservation was necessary. But the non-usor of its franchises and the abandonment of its organization by the company and its relinquishment of the objects for which it was created, as long ago as 1859, furnished a sufficient justification to the Legislature for the acts of 1861–2–3.

And moreover as nothing appears to the contrary, it must be presumed that the company has acquiesced in these acts of the Legislature, which acquiescence would of itself be tantamount to the voluntary surrender of its franchises.

But the abandonment by the company of its organization and the objects for which it was created as alleged in the complaint, is of itself equivalent to a surrender of its rights and franchises; it being a well established principle, that whenever a corporation does or suffers to be done, acts which destroy the end and object for which it was instituted, it thereby surrenders its rights. *Bradt vs. Benedict,* 17 *N. Y., page* 96 *and* 99.

*By the Court*—McMillan, J.—This action is brought under *Subdivision* 4, *Sec.* 156, *of the Pub. Stat., page* 553, to recover the unpaid amount of subscription of the defendant to the stock of the Minneapolis and Cedar Valley Railroad Company, the judgment debtor. The plaintiff sues as Sheriff by virtue of a levy upon the said indebtedness of the defendant, Sibley, to the Railroad Company, under an execution upon a judgment in favor of McDonald, Graham & Co., against the said Minneapolis and Cedar Valley Railroad Company. His right of action must depend, therefore, entirely upon the statute authorizing him to collect debts thus levied upon. *Pub. Stat., Chap.* 61, *Sec.* 109, *page* 572.

The Minneapolis and Cedar Valley Railroad Company was incorporated during our Territorial existence, by special act of the Legislature approved March 1, 1856, and does not, therefore, come within the provisions of the State Constitution relating to corporations, nor is there in the act of incorporation any provision making the stockholders individually liable to any extent for the debts of the company. It is not claimed that the general provisions of statute relating to corporations (*Pub. Stat., pages* 330–1–2–3, *Secs.* 321–2,) affect this case, nor do we deem these provisions applicable in this instance. *Gebhart vs. Eastman & Gibson,* 7 *Minn.,* 60. The liability of the defendant, therefore, as a stockholder in the corporation is unaffected by statutory provision.

Assuming, for the purposes of this case, that the statute authorizing the attachment and levy of debts due to a judgment debtor —*Pub. Stat., subdivision* 3, *Sec.* 148, *page* 551—embraces demands both of a legal and equitable character, it is evident that the rights and liabilities of the parties to the *debt levied on,* must characterize it as a legal or equitable claim, and that the Sheriff can avail himself only of equities existing between such parties, and not of such as may exist in favor of the judgment creditor against any or all of such parties. Therefore, the plaintiff in this case can have no greater rights against the stockholder than the company has. Excluding then any equities peculiar to a creditor of a corporation, which under other circumstances might be recognized, let us consider the liability of the stockholders to the company.

The allegation in the complaint is that the defendant, Sibley, after the organization of the company duly subscribed for and agreed thereby to pay to said Railroad Company, 250 shares of $100 each of the capital stock of said company, but has not paid to exceed five per cent. thereof.

The charter provides that "the directors may require and receive payment of the subscriptions to the capital stock at such time and in such proportion, not exceeding ten per cent., at any one installment under such conditions as they shall see fit, and may

declare said stock forfeited, and all payments thereon, or otherwise, on a failure to make payment as required, provided they shall first give thirty days' notice of such requisition."

The subscription thus pleaded must be taken as a naked subscription for stock, showing no *express* promise to pay, and as between the stockholder and the company, the terms of the charter regulating the subscriptions for stock, must be considered as entering into the contract between the stockholder and the company.

Whether on a simple subscription for stock, the company can maintain an action at law, has been variously decided, and the authorities differ widely; as the question was not discussed in this case, and but two of the members of the Court take part in this decision, we refrain from deciding the point, but assuming that an action will lie in favor of the company against the stockholder upon an implied promise, still the terms of the subscription must be the measure of the defendant's liability, and, unless by these terms the debt is recoverable, no action can be maintained by the company.

The terms of this contract on the part of the stockholders are, to pay the amount when called by the company, in installments not exceeding ten per cent. each, upon thirty days' notice. Here are three conditions or qualifications of the promise; first, a call by the company, and this not a call upon an individual stockholder, but upon the whole stock of the corporation; second, for an amount not exceeding ten per cent. of the stock; third, thirty days' notice.

The complaint does not allege a call for any installment or for any amount, either upon the whole stock or the defendant individually, but avers that no call has been made; nor does it allege any default except that "the defendant has not paid to exceed five per cent. of the amount of stock subscribed for by him."

We are unable to see, in this state of facts, any breach of the contract on the part of the defendant, upon which *the* company can maintain an action against him.

The complaint seeks to avoid this difficulty by alleging the insolvency of the company, its refusal to call for installments of

stock subscriptions, or make provision for the payment of its debts; the total abandonment of the work for which it was created, and of its own organization since some time in 1859.

We do not think these circumstances affect the rights of the parties in this action.  In a direct proceeding in equity, by a creditor against a corporation and its stockholders, invoking a court of chancery to subject the unpaid stock of a corporation to the liquidation of its liabilities, the creditor might perhaps avail himself of these facts as a ground of equitable relief.  But the plaintiff—the Sheriff—in this action, as we have before endeavored to show, has no other rights in this matter than such as pertain to the company as against a stockholder, and in such case, we think, it cannot be claimed that the facts pleaded strengthen the claim of the company to recover for a breach of the contract of subscription to its stock; on the other hand they go directly to defeat such claim.

Whatever view may be taken of the doctrine laid down by the Supreme Court of Ohio in the cases cited by the counsel for the appellant, an examination of the cases we think will show that they do not sustain the position taken by the appellant in this case.  These were all proceedings in chancery under a special statutory provision, (*Swan's Stat.*, 704, sec. 16, *Ed.* 1841), brought by *judgment creditors*, after return of *nulla bona*, directly against the corporation and certain delinquent stockholders.  In these cases the creditors, although they came into a court of chancery under statutory provisions, brought with them all their equities not only against the corporation, but the stockholders, and these could all be recognized and enforced.  In this case the creditor himself does not come into court, but the sheriff comes, bringing, not the equities which would attach to the creditor in a direct proceeding against all the stockholders, but if anything more than a legal title, strictly statutory, to a debt, certainly only such equities as exist between the original parties to the claim levied on.

A single instance will illustrate the vital difference between the cases cited by the appellant's counsel and the case at bar.  The Supreme Court of Ohio says: " When a company as in this case

becoming insolvent, abandon all action under their charter, the original mode of making calls upon the stockholders cannot be pursued. The debt, therefore, from that time must be treated as due without further demand." *Henry et al. vs. Vermillion and Ashland R. R. Co. et al.,* 17 *Ohio R.,* 187.

This may be true in equity in an action by the creditor against the company and stockholders, in which it was enunciated, but the same rule will not apply in an action by the company against a stockholder on his stock subscription, since such a state of facts throws the whole default upon the company.

We are of opinion, therefore, that the complaint does not state facts sufficient to constitute a cause of action. The order sustaining the demurrer should be affirmed.

